# COURT OF APPEALS OF TEXAS.

## TYLER TERM, 1878.

---

### R. J. DAVIDSON v. THE STATE.

RAILWAYS — CONSTITUTIONAL LAW. — The act of 1866, which, under penalties upon conductors, requires that a stoppage of five minutes at every way-station be made by every train of passenger-cars, is constitutional. See the opinion *in extenso* upon the scope of the police power of the Legislature in this and similar respects.

APPEAL from the County Court of Caldwell. Tried below before the Hon. E. H. ROGAN.

The opinion states the case.

*E. P. Hill*, for the appellant, cited *The State* v. *Noyes*, 47 Maine, 189.

*George McCormick*, Assistant Attorney-General, for the State.

WHITE, J. The information in this case was based upon the first section of an act entitled, "An act to regulate the time that railroad passenger cars shall stop at way-stations" (Acts 1866, p. 93 [2 Pasc. Dig., art. 6532] ), which is in these words: " From and after the establishment of any wayside station, or stations, by any railroad company in this state, it shall be the duty of the conductor, or other person, in charge of any train of passenger cars upon such railroad, to stop his train at each and every such station not less than five minutes; and any such conductor, or

other person, in charge of such passenger train, who shall, upon any occasion, pass any such station without stopping his train as aforesaid, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall for each and every offense be punished by a fine of not less than fifty dollars, and not more than one hundred dollars, or by imprisonment in the county jail for a term not exceeding thirty days, and may be proceeded against for such offense by information or indictment, in any county through which the road passes."

Having, as conductor upon the Galveston, Harrisburg & San Antonio Railroad, been convicted under this statute, the appellant in this case presents the sole question of the constitutionality of the law.

It is contended that power to pass such laws is referable only to, and must be regulated and determined by, the police power of the state, and that the police power of the state extends to regulations looking only to public *safety* and not to public *convenience.*

In treating of the police power of the states, Mr. Cooley, in his celebrated work on Constitutional Limitations, says:

"The rights insured to private corporations by their charters, and the manner of their exercise, are subject to such new regulations as from time to time may be made by the state, with a view to the public protection, health, and safety, and in order to guard properly the rights of other individuals and corporations.   *   *   *   The limit to the exercise of the police power in these cases must be this: The regulations must have reference to the comfort, safety, or welfare of society; they must not conflict in any way with the provisions of the charter; and they must not, under the pretense of regulation, take from the corporation any of the essential rights and privileges which the charter confers.  In short, they must be police regulations in fact,

and not amendments of the charter in curtailment of the corporate franchise." Cooley's Const. Lim., 3d ed., 576, 577.

Again, the same learned author says:

"The state may also regulate the grade of railways, and prescribe how and upon what grade railway tracks shall cross each other; and it may apportion the necessary expense of making the necessary crossings between the corporations owning the roads. And it may establish regulations requiring existing railways to ring the bell or blow the whistle of their engines immediately before passing highways at grade, or other places where their approach might be dangerous to travel. * * * And it cannot be doubted that there is ample power in the legislative department of the state to adopt all necessary legislation for the purpose of enforcing the obligations of railway companies, as carriers of persons and goods, to accommodate the public impartially, and to make every reasonable provision for carrying with safety and expedition." *Ibid.* 580, 581.

In *Benson* v. *Mayor of New York*, 10 Barb. 245, it is said, in considering a ferry-right granted to a city: "Franchises of this description are partly of a private and partly of a public nature. So far as the accommodation of passengers is concerned, they are *publici juris;* so far as they require capital and produce revenue, they are *privati juris.* Certain duties and burdens are imposed upon the grantees, who are compensated therefor by the privilege of levying ferriage and security from spoliation, arising from the irrevocable nature of the grant. The state may legislate touching them so far as they are *publici juris.* Thus, laws may be passed to punish neglect or misconduct in conducting ferries, to secure the safety of passengers from danger and imposition."

This police power of the state, which resides primarily and ultimately in the Legislature, has also been held to

extend to the right to require all railways to fence their roads on both sides, and also cattle-guards at all farm and road crossings. *Thorpe* v. *Rutland & Burlington R. Co.*, 27 Vt. 140. And so it has been held that "it may be extended to the supervision of the track, tending switches, running upon the time of other trains, running a road with a single track, using improper rails, not using proper precautions by way of safety beams, in case of the breaking of axle-trees, the number of brakemen on the train with reference to the number of cars, employing intemperate or incompetent engineers and servants, running beyond a given rate of speed, and a thousand similar things, some of which have been made the subject of legislation or judicial determination, and all of which may be." *Hegeman* v. *Western R. Co.*, 16 Barb. 353.

In this latter case it was further, and well, said: "There is, also, the general police power of the state by which persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health, and prosperity of the state; of the perfect right in the Legislature to do which no question ever was, or upon acknowledged general principles can be, made, so far as natural persons are concerned. And it is certainly calculated to excite surprise and alarm that the right to do the same in regard to railways should be made a serious question."

In the case under consideration, viewed in the light of the authorities given, we are of opinion that the Legislature, under the general police power of the state, had the right to so regulate the time of stoppage at wayside stations of passenger railroad trains, and that in the enactment of the act in question they have not transcended the legitimate scope of that power.

So believing, and, further, that no error has been committed in the trial of the case in the court below, the judgment is affirmed.

*Affirmed.*