# Nashville, Chattanooga & St. Louis Railway Co. *v.* The State.

*Indictment against Railroad Corporation employing Conductor without Certificate as to Color Blindness.*

1. *Statute requiring examination of railroad engineers and conductors for color blindness; constitutionality of.*—Under the decisions of this court (*McDonald v. The State*, 81 Ala. 297) and the Supreme Court of the United States (*Smith v. The State*, not yet reported), the act approved February 28th, 1887, "for the protection of the travelling public against accidents caused by color blindnss and defective vision" on the part of railroad engineers and conductors (Sess. Acts 1886-7, p. 87), is a legitimate exercise of the police power of the State, and not an unauthor-

[Nashville, Chattanooga & St. Louis Railway Co. v. The State.]

ized interference with inter-state commerce, nor otherwise objectionable on constitutional grounds.

2. *Same; invalid provisions in constitutional law.*—If the provision in said law which declares that the examinations shall be made at the expense of the railroad corporations, or the provision which authorizes the State Board of Health to make alterations or additions in or to the rules and requirements of the law itself, one or both, be unconstitutional, or invalid for any reason, this would not destroy the entire statute, nor defeat a criminal prosecution for a violation of the valid provisions.

3. *Same; employment of conductor or engineer here, under contract made elsewhere.*—Although the legislature of Alabama can not regulate or prescribe the conditions of contracts made in another State, it may regulate the employment of persons here under contracts made elsewhere; and this is the extent of said statute approved February 28th, 1887, in reference to the *employment* of conductors and engineers who have not been examined as required.

FROM the Circuit Court of Jackson.

Tried before the Hon. JOHN B. TALLY.

The indictment in this case charged, in a single count, "that the Nashville, Chattanooga & St. Louis Railway Company did, on the 2d day of August, 1887, employ James Moore as train-conductor on its road in Jackson county, in the State of Alabama; said James Moore, at the time of such employment by said railway company, not possessing a certificate of fitness for such train-conductor, in so far as color blindness and visual powers are concerned, duly issued in accordance with the requirements of the statute in such case made and provided; against the peace," &c.

The indictment was founded on the statute approved February 28th, 1887, entitled "An act for the protection of the travelling public against accidents caused by color blindness and defective vision."—Sess. Acts 1886–7, p. 87. The statute contains seven sections. The 1st section enacts, "that all persons affected with color blindness and loss of visual power, one or both, to the extent to be defined in accordance with the requirements of this act, shall be, and they are hereby, disqualified from serving on railroad lines within this State, in the capacity of locomotive engineer, fireman, train conductor, brakeman, station agent, switch-man, flag-man, gate-tender, or signal-man, or in any other position which requires the use or discrimination of form or color signals." *Sec.* 2: "That any person who shall serve in any of the capacities mentioned in section one of this act, without first having obtained a certificate of fitness for his position, in accordance with the provisions of this act, shall be guilty of a misdemeanor, and, on conviction, shall be fined not less than

[Nashville, Chattanooga & St. Louis Railway Co. v. The State.]

ten, nor more than fifty dollars, for each and every offense." *Sec.* 3: "That on and after the first day of June, 1887, examinations and re-examinations, at the expense of the railroad companies, shall be required under this law; and any railroad company, officer or agent of the same, employing after said date a person in any of the capacities specified in section one of this act, who does not possess a certificate of fitness therefor, in so far as color blindness and visual powers are concerned, duly issued in accordance with the requirements of this act, shall be guilty of a misdemeanor, and for each and every offense shall be punished by a fine of not less than fifty, nor more than five hundred dollars; *provided,* that those persons already in employment in said capacities on the first June, 1887, shall be allowed until the 1st day of August, 1887, in which to procure the necessary certificates." *Sec.* 4: "That it shall be the duty of the State Board of Health to supervise the administration of this law; to prescribe the methods in which such examinations shall be made, the forms of certificates to be issued, of records to be kept, and of reports to be made by the examiners, and such other rules and regulations as shall, from time to time, by said board be deemed necessary;" and it was made the duty of the Governor "to appoint as examiners a suitable number of properly qualified medical men for carrying this law into effect, and to so distribute them through the State as best to subserve the convenience of all parties concerned." The 5th section authorizes any one of the examiners to "make the examination and issue the certificates required by this act," and gives him a fee of three dollars for each examination; the 6th provides, "that the following rules shall govern the action of the examiners; *provided,* that the State Board of Health may, from time to time, make such alterations in, or addition to these rules and requirements, as they may deem just and proper;" and the 7th, that the act "shall be in force from and after June 1st, 1887."

The defendant appeared by attorney, and demurred to the indictment, on the ground that the statute on which it was founded is unconstitutional, "because—1st, it is a regulation of inter-state commerce;" 2d, "because it seeks to abridge the privileges or immunities of citizens of the United States;" 3d, "because it seeks to deprive a person of his property without due process of law;" 4th, "because it seeks to interfere with and detain the employees of a foreign corporation, passing through the State for the purposes of traffic and

commerce;" 5th, "because it is an interference with the rights of citizens of another State, while passing through this State for the legitimate purposes of commerce and traffic;" 6th, "because it compels the railroad companies to pay for services rendered to some one else, and is therefore the taking of the property of one person for the benefit of another;" 7th, "because it denies the right of a foreign corporation to send a non-resident employee through the State of Alabama, without having a certificate of a certain character;" 8th, "because it confers legislative authority on the State Board of Health;" and, 9th, "because it confers judicial powers on the State Board of Health." The court overruled the demurrer, and the defendant then pleaded not guilty.

On the trial, as appears from the bill of exceptions, it was proved on the part of the State, that on the 2d August, 1887, James Moore was in the employment of the defendant corporation as a train-conductor, and acted in that capacity in running a train of cars on its road through Jackson county; and that said Moore did not at the time have a certificate of fitness as train-conductor, under the provisions of said act of February 28th, 1887, nor had he made application for such certificate. It was admitted that the defendant corporation was chartered and organized under the laws of Tennessee; that it has 464 miles of its road in that State, 24 miles of its main trunk in Alabama, seven miles in Kentucky, and two miles in Georgia; and that neither its charter, nor any law of Tennessee, requires that conductors, engineers, or any other persons in the employment of railroad companies, shall obtain a certificate of fitness as to color blindness or defective vision. On the part of the defendant it was proved, that it has about three thousand men in its employment, all of whom are employed at the office of the company in Nashville; that the said James Moore was there employed, at a stipulated monthly salary, on the 2d August, 1887, as a conductor on a through train running from Nashville to Chattanooga, which train passes on its route through the 24 miles of road in Jackson county, Alabama, and did pass through on that day; that the train carried passengers, freight, and the United States mail, from Nashville and other points beyond, to Chattanooga and other places beyond; that said Moore was a resident citizen of Tennessee; and that if he had been compelled to stop *in transitu,* and be examined for color blindness, it would have caused his train to miss con-

[Nashville, Chattanooga & St. Louis Railway Co. v. The State.]

nection at Chattanooga, and thereby delay the transportation of the passengers, freight, and United States mail, to their respective points of destination beyond. The defendant read in evidence, also, the act of the General Assembly of Alabama, approved January 21st, 1850, granting the right of way through Jackson county to the Nashville and Chattanooga Railroad Company, which was the defendant's corporate name at that time.—Sess. Acts 1849–50, p. 171.

This being all the evidence, the court charged the jury, on request of the solicitor, that they must find the defendant guilty, if they believed the evidence; to which charge the defendant excepted.

O. R. HUNDLEY, for the appellant.

THOS. N. McCLELLAN, Attorney-General, for the State.

STONE, C. J.—It is contended for appellant—defendant below—that the act "For the protection of the travelling public," &c., approved February 28th, 1887—Sess. Acts, 87 —is unconstitutional, on two grounds: First, in declaring that the examinations in reference to color blindness, for which it makes provision, shall be "at the expense of the railroad companies." The second ground urged is, that while the statute specifies and declares certain rules for conducting examinations and granting certificates, it nevertheless provides "that the State Board of Health may, from time to time, make such alterations in, or additions to these rules and requirements, as they may deem just and proper."

We do not consider the decision of either of these questions necessary in this case. The first will arise, and properly arise, when the railroad corporation is sought to be held accountable for the fee. Its refusal to pay does not relieve the physician, accepting appointment as examiner, of the duty of examining and certifying as to the qualifications of applicants who come properly before him.—*Baldwin v. Kouns*, 81 Ala. 272. Nor can the second of the questions arise, until the State Board of Health attempts to make alterations in, or additions to the rules for examination of applicants for license. It is not pretended that they have yet attempted to do so.

If either or both of these provisions should be declared invalid, or even unconstitutional, such ruling will not impair the unity of the statute, or work its destruction. It can

still be executed in the spirit in which it was framed. 3 Brick. Dig. 127.–8, §§ 18, 23, 25, 26, 27.

An argument has been made before us, based on the word *employ* ("employing") as used in the statute. The contract under which the services of the conductor were obtained in this case, was made in the State of Tennessee—the State in which the corporation has its domicil and principal office. The argument is, that the legislature of this State can not prescribe rules for making contracts in another State. The conclusion is just, if the premises justify it. But they do not. The provision has no reference to the mere contract under which the services were obtained. It relates to and regulates the services procured to be performed for the corporation. Its meaning in this statute is, to make use of, to intrust with some agency or duty; making use of, intrusting with some agency or duty.—Worcester's Dictionary. There is nothing in this argument.

The remaining questions argued in this case have been considered and settled adversely to appellant, both by this court and by the Supreme Court of the United States. *McDonald v. State*, 81 Ala. 279; *Smith v. State*, (recently) U. S. We have no wish to reopen the discussion.

The judgment of the Circuit Court is affirmed.