# Brooks *v.* The State.

*Indictment against Unlicensed Physician.*

1. *Constitutionality of statutory provisions regulating practice of medicine.*—The statutory provisions regulating the practice of medicine in this State, giving to the County Commissioners power to appoint a board of medical examiners, with authority to examine and grant licenses to applicants, if there is in the county no medical society in affiliation with the State Medical Association, but further providing that their authority shall cease so soon as such county medical society may be organized, and confiding to such society the exclusive right and

[Brooks v. The State.]

authority to examine and license, according to " the standard of qualification, the method or system, and the subjects of examination prescribed by the State Medical Association, " (Code, §§ 1296-1307), is a valid exercise of the police power, and is not violative of any constitutional provision or principle.

2. *Practicing medicine without license, under foreign diploma.*—Under the statute which makes it a misdemeanor, punishable by fine, for any person to practice medicine or surgery " without having first obtained a license, or diploma, or certificate of qualification, or not being a regular graduate of a medical college of this State, having had his diploma legally recorded " (Code, § 4078), a conviction can not be had against a person who has procured a diploma from a regular medical college in Georgia, and has had it recorded in the county in which he is practicing his profession, and in which there is a county society in affiliation with the State Medical Association.

From the Circuit Court of Russell.

Tried before the Hon. Jesse M. Carmichael.

The defendant in this case, Dr. S. W. Brooks, having procured a diploma from a regular medical college in Georgia, came into Russell county, Alabama, in April, 1889, and there began to practice medicine, having had his diploma recorded in the office of the judge of probate. At that time, there was a county medical society in Russell, in affiliation with the State Medical Association; and Dr. Brooks not having gone before its Board of Censors for examination, license, or certificate of qualification, the indictment in this case was found against him, for practicing medicine in violation of section 4078 of the Code. The court charged the jury, if they believed the evidence, they must find the defendant guilty; to which charge the defendant excepted.

Geo. P. Harrison, for appellant.

Wm. L. Martin, Attorney-General, and Tompkins & Troy, *contra.*

STONE, C. J.—There can be few questions, if any, more clearly within the police powers of the government, than the conservation of the public health. On this power rests all the doctrine of quarantine, of pest-houses, of compulsory vaccination, of sanitary sewerage, of many forms of public nuisance, and many other acts of precaution, not necessary to be enumerated. And a learned and qualified membership of the medical profession is one of the confessed agencies in protecting the public against the dangers of charlatanism. To prescribe rules and tests for the ascertainment of the qualifications of applicaants for authority to practice medicine as a livelihood, is clearly within the scope of legislative

[Brooks v. The State.]

power.—Cooley Const. Lim. (5th Ed.), 722; *Dent v. West Va.*, 129 U. S. 114; *McDonald v. State*, 81 Ala. 279; 60 Amer. Rep. 158; *N., C. & St. L. R. R. Co. v. State*, 83 Ala. 71; *L. & N. R. R. Co. v. Baldwin*, 85 Ala. 619. Tiedeman, Limitations of Police Power, § 87, doubts this doctrine, but we can not agree with him. We do not place the State's right and power in the premises on the ground of benefit or privilege conferred on the physician. It stands on the higher plane of protection to the public against the consequences of ignorance and quackery. Nor do we think there is any thing in the objection, that by the terms of the law its provisions take effect in any given county, only when there is a medical society organized in such county, in affiliation with the Medical Association of the State, as declared by the act approved February 9, 1877.—Sess. Acts, 80; Code of 1886, §§ 1301 *et seq.* We are not able to perceive any difference in principle between the statute under discussion, and the stock laws and local-option statutes, so frequently brought before us for determination.—*Dunn v. Court of County Comm'rs*, 85 Ala. 144.

We find nothing in the civil aspects of the statute which offends the State constitution.

The violation of the statute we have in hand is, however, not an offense which the law characterizes as *malum in se.* It is only *malum prohibitum*, or a wrong only because the law prohibits it. Such violation of law is not, without more, an indictable offense. Says Mr. Cooley—Const. Lim. (5th Ed.), 745—"Whether the prohibited act or omission shall be made a criminal offense, punishable under the general laws, or subject to punishment under municipal by-laws, or, on the other hand, the party be deprived of all remedy for the right, which, but for the regulation, he might have had against other persons, are questions which the legislature must decide." So, however much the legislature may enjoin certain duties, or interdict certain omissions of duty, unless the duty commanded, or the act prohibited, would amount to an indictable offense independent of the statute, no indictment can be maintained, unless the statute expressly authorizes it.

Section 4078 of the Code of 1886 is the statute under which it is claimed the defendant was rightly convicted. It stands in the place of section 4243 of the Code of 1876, but is materially different from it. It declares, that any person practicing medicine or surgery, except in one of four named

[Brooks v. The State.]

categories, "must on conviction be fined not more than one hundred dollars." There is no other statutory provision bearing expressly on this aspect of the case. The enumerated categories, which the statute excludes from its operation, are: first, that the physician or surgeon has first obtained *a license;* or, second, that he has obtained *a diploma;* or, third, that he has obtained *a certificate of qualification;* or, fourth, that he is *a regular graduate of a medical college of this State, having had his diploma legally recorded.*

It was proved that, before defendant entered upon the practice of medicine in Russell county, there was organized in said county a county medical society, in affiliation with the Medical Association of Alabama, as provided by section 1301 of the Code of 1886, and that said county medical society had kept up its organization. The State proved a *prima facie* case against the defendant, and rested. The defendant then read in evidence a diploma from a regular medical college in the State of Georgia, and proved that he had had said diploma recorded in the office of the Judge of Probate of Russell county, before he entered upon the practice of medicine. The defendant was convicted—the court instructing the jury to find him guilty, if they believed the evidence.

By an examination of the Code of 1886, beginning with section 1296, it will be seen that, under our statutes, there are two organizations, or systems, under which physicians may obtain authority to practice their profession. The one system is by license from a medical board established by the court of County Commissioners, for the county in which the applicant proposes to practice.—§§ 1296, 1297. Under that system, "A regular graduate of a medical college in the United States, having a diploma," and having that diploma properly recorded, "is entitled (without a license) to practice medicine, in a county having only a medical board established by the court of County Commissioners."—§ 1298. Authority to practice medicine under the foregoing provisions is, however, limited to counties "in which there is no board of medical examiners organized in accordance with the constitution of the Medical Association of the State of Alabama, and in affiliation with the association; . . . but the existence and authority thereof must terminate whenever a board of medical examiners is organized in the county in accordance with the constitution of the Medical Association of the State, and in affiliation with the association." When

such board of examiners is organized in any given county, then a license or certificate of qualification from such board is a pre-requisite to the right to practice medicine in that county, with certain exceptions not raised by this record. Having a diploma from a medical college of this State, legally recorded, is not named as an exception. Hence, consulting only the language of the statute, it would seem that even a graduate of a medical college in this State, is not allowed to practice his profession in a county having a medical society in affiliation with the State Medical Association, without first obtaining a certificate of qualification, to be recorded as the statute prescribes.—Code, §§ 1302, 1306. This is the second system for obtaining authority to practice medicine, and supplants the other whenever it is in exercise.

The language of the penal enactment, § 4708, as we have shown, excludes from its operation four specified categories. The second of the categories expressly excepted is, "not having first obtained a diploma." Brooks had first obtained a diploma, and, therefore, if we consult only the penal section, unaided by other provisions, his case does not fall within it. We are not permitted to say that the word *diploma* first mentioned in this section, and copied above, must mean a diploma from a medical college of the State of Alabama, for the fourth exception makes express provision for just such case. If exception two and exception four cover the same ground, why duplicate the expressions, and why require a record to be made in one case, and not in the other? If it be objected that the interpretation we propose leads to the absurdity of requiring an Alabama graduate to record his diploma, and excuses graduates of other medical colleges from doing so, our answer must be, that we are dealing, not with our own language, but with the language of the statute as it is written.

It is contended, in favor of the ruling of the Circuit Court, that we must interpret the penal section in the light of the statute found in the civil part of the Code—§ 1296 *et seq.*— and hold that, under its very general provisions, an indictment will lie for practicing medicine without conforming to what that somewhat comprehensive statute has enjoined as prerequisite duties. And, carrying out this idea, it is claimed that we must so construe the statute as to make its provisions applicable to every departure from statutory requirements, whether the breach be committed in a failure to obtain authority from one board of examiners, or the other;

[Brooks v. The State.]

that practicing medicine "without a license," or "without a diploma," must refer to counties which are without a board of medical examiners, in affiliation with the Medical Association of the State, while the other two exceptional provisions refer to counties in which there is such board.

It would, as a general proposition, be dangerous to apply such liberal rules to the interpretation of penal enactments. When the legislature enjoins several duties, some of graver, and others of minor importance, and then declares that a breach of the graver of those duties shall constitute an indictable misdemeanor, and fails to make a similar declaration as to the others, to assume that they meant more than they expressed would be treading on dangerous ground. To undertake the practice of medicine without a diploma, without a license, and without a certificate of qualification, is certainly a graver offense to society and its well-being, than to assume to practice by virtue of a medical education and diploma from a college outside of the State of Alabama, or to omit to have that diploma recorded. We can not know that the legislature intended farther than they have expressed their intention.

There is a stronger reason why we can not adopt the interpretation contended for. Under the provisions of the civil part of the statute, only certain expressed classes of persons can, without examination, obtain certificates of qualifications, from examiners acting in affiliation with the State Medical Association; and such certificate—not the diploma—must be recorded.—Code, §§ 1305–6. There is no provision authorizing graduates of an Alabama Medical College to practice medicine without a certificate of qualification, or which entitles them to such certificate on the mere production of a diploma. Yet it is clearly not an indictable offense for "a regular graduate of a medical college of this State, having had his diploma legally recorded," to engage in such practice. This demonstrates that the penal section, 4078, is not co-extensive with what are called the civil provisions.

The judgment of the Circuit Court is reversed; and inasmuch as the defendant can not, under the facts of this case, be convicted, the cause will not be remanded. Let the defendant be discharged.