# Smith v. The State.

## Practicing Medicine Without License.

(Decided May 13, 1913.   Rehearing denied June 6, 1913.
63 South. 28.)

1. *Indictment and Information; Sufficiency.*—An indictment drawn in accordance with form 84, section 7161, Code 1907, is sufficient to charge the offense denounced by section 7564, Code 1907, and not subject to demurrer.

2. *Physicians and Surgeons; Regulation; Constitutionality.*—The statute requiring a certificate of qualification from the State Board of Medical Examiners, is not an unconstitutional exercise of the police power as applied to a mental healer for compensation.

3. *Same; Practicing Without Authority; Mental Healer.*—One who attempts for compensation to heal diseases by the power of mental suggestion, using harmless pills and electric treatment merely as an aid to this suggestion, and who does not attempt to treat cases requiring surgical skill must first take the examination and obtain a certificate of qualification from the State Board of Medical Examiners as required by section 1626, et seq., Code 1907, otherwise, he is subject to the provisions and penalty prescribed by section 7564.

APPEAL from Bessemer City Court.

Heard before Hon. J. C. B. GWIN.

J. J. Smith was convicted of treating diseases for compensation without having obtained a certificate from the Board of Medical Examiners, and he appeals. Affirmed.

ESTES, JONES & WELCH, for appellant. Under the evidence defendant was not liable to conviction under sec-

tion 7564, and the demurrers to the indictment should have been sustained.—187 U. S. 94, 135 Fed. 1.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. The indictment followed the Code form and was therefore sufficient.—Form 84. The other questions presented have been determined adversely to appellant's contention.—*Bragg v. State,* 134 Ala. 165.

THOMAS, J.—The defendant was convicted of the offense prohibited by section 7564 of the Code, treating human diseases without having obtained a certificate of qualification from the State Board of Medical Examiners. The form of indictment prescribed by law for charging such offense was followed in this case, and the complaint was therefore not subject to the demurrer interposed to it.—Code, § 7161, form 84; *Carter v. State,* 3 Ala. App. 112, 57 South. 1022. The case was tried by the court without the intervention of a jury, as provided by law, upon an undisputed state of facts.

It is admitted that the defendant, who within the past 12 months moved into Jefferson county, held himself out and offered to treat and did treat human diseases for a consideration in money; that he gave the patient, in the particular case relied on by the state for conviction, a little bottle of white pills to take internally, and had her place her feet in a tub of water, while holding with her hands the cords of a dry electric battery, which he had placed in the tub; that he diagnosed the case of the patient as that of "general debility," and professed to be able to cure her entirely with 10 or 12 of such electrical treatments at $1 per treatment, promising a refund of the money if no good resulted.

23 CA

The defendant styles himself a "Vitapathic and Scientific Healer," and as a witness in his own behalf explained his system of treatment substantially as follows: "I treat diseases of human beings, rather I bring about a state of thought in the patient which works the healing of disease. It is really the power of mind over matter. * * * If we can get a person to really thinking and believing that he is getting better and is going to get well, he will get well. As to the little white pills I give, they are simply a little predigested food. * * * I do not give them as a curative remedy, nor did I have the person use the electric battery as a curative remedy, but simply to assist me in getting the patient to the point of believing, upon my suggesting it, that he is getting better and is going to get well. * * * The reason the use of these things helps me in getting a person to believe in the fact that he is going to get well is because people all over the country are so accustomed to medicine being used as a cure for disease that by the employment of what appears to be such, in connection with my suggestion of health, I can bring about the desired mental action quicker and sometimes more effectively. These means are entirely harmless and ineffective as a remedy, aiding only as a suggestion. Anybody could give the little pills—all of them could be taken without bad effect—and anybody could apply the little battery, a single little dry telephone battery with two little cords attached to it. * * * I do not always use the same thing for the same disease. I sometimes use salves or simple salt water to get the patient's mind in proper condition. In some cases I do not use anything; that is, when without it I can get the attention of the patient and belief on his part in his recovery. * * * There is no hypnotism whatever about my system of treatment. I know noth-

ing about hypnotism. In order for a person to treat diseases on the system or plan I use, or rather in order for a person to be able to bring about a state of mental condition or belief that will result in the cure of disease, it is not necessary for him to understand anything about chemistry, anatomy, physiology, etiology, pathology, symptomatology, and diagnosis of disease; obstetrics and obstetrical operations, gynecology, major and minor surgery, physical diagnosis, diseases of the eye, ear, nose, and throat, hygiene or medical jurisprudence, [the subjects which an applicant is required by section 1627 of the Code to stand an examination upon before the State Board of Medical Examiners and receive a certificate of qualification, before he is permitted to practice any system whatsoever of treatment for human diseases; otherwise he incurs the penalty of section 7564 of the Code, under which defendant is charged.] A person without any education whatever can use my system of treatment just as effectively as I can, just so they understand how to bring into play the conscious real mental power resting in every intelligent person. It is the power of mind over matter, over the body. I do not treat persons for broken limbs, or in cases of obstetrics, etc., that requires surgical assistance."

We do not doubt that the mind exercises a potent influence over the body, nor but what its state in many cases has materially to do with the condition of the body; nor do we doubt the efficacy of mental suggestion as a force or agency in leading nature to assert itself and effect a cure of many of the ills that flesh is heir to, nor but what that suggestion may be often effectually aided by the employment upon the patient of ineffective, but supposed effective, physical remedies, resembling in kind, but without his knowledge, differing in character from those that he has been accustomed to associate

in his mind with and to see used in the cure of disease. For the purposes here, the philosophy of defendant's treatment may be conceded, even to the full extent of the power he claims for it, with no limitations upon it save those he admits, and yet the practice of it, in our opinion, falls within the inhibition of the law, its letter and purpose, unless the defendant first stands an examination upon those branches of medical science or learning hereinbefore enumerated, and receives a certificate of proficiency therein—except major surgery, upon which he is not required by the law to stand an examination if he states in writing before the examiners that he does not propose to employ that in his practice.— Political Code, § 1626 et seq.; Criminal Code, § 7564.

The section of the Criminal Code cited is a part of the same act (Act Aug. 7, 1907, p. 591) as that incorporated in the sections of the Political Code cited. The act mentioned was passed after the decision of *Bragg v. State,* 134 Ala.165, 32 South. 767, 58 L. R. A. 925, and therefore with knowledge on the part of the Legislature of such decision. Indeed the history of that legislation, as disclosed by the journals of the House and Senate and the original bill (House Bill 675), in which the act had its inception, will show that that decision gave rise to the legislation, which, while designed in its origin to destroy the effect of that decision, construing the then existing statutes as preventing the practicing of osteopathy without standing the examination then required, culminated in an amended bill, which became the statute here violated, and which, among other changes wrought in the law, broadened the language, as to the class of persons to whom it should be applicable, from those "practicing medicine in any of its branches or departments," the language of the statute construed in *Bragg v. State, supra,* as extending to

osteopaths, to "all persons who treat or offer to treat diseases of human beings by any system of treatment whatsoever," the language of the present statute.

The clause is indeed comprehensive in its scope as to the class of persons upon whom the law is to operate; nor are we prepared to doubt the wisdom of the enactment, or the extensiveness of its intended application. The law leaves the practitioner free to adopt any system or kind of healing or cure that he may see fit, whatever it be, whether it be physical or mental, or both; it requires an examination upon no system of therapeutics, and exacts no certificate of proficiency therein. What it does require is the standing of a successful examination upon those branches of medical learning—chemistry, anatomy, physiology, etiology, pathology, symptomatology, gynecology, diagnosis of disease, physical diagnosis, diseases of the ear, eye, nose, and throat—a knowledge of which is deemed necessary to an intelligent understanding of the human body, its composition, organs and their functions, and to an ability to know when it is diseased and when it is not, and when so, to be able to properly diagnose the trouble, a sine qua non to intelligent treatment of any sort; and a successful examination upon hygiene, so that the practitioner will know how to prevent disease and may avoid, at least, the spread and communication to others of the diseases of his patients, or to them of other diseases; and a successful examination upon medical jurisprudence, so that, when called upon to testify as to cases coming under his observation, he may be an intelligent witness, and as such be able to render aid to the courts in the investigation of truth and the administration of the law of the land; and a successful examination upon obstetrics and obstetrical operations, a knowledge of which, as practically admitted by the defendant himself,

is indispensable to the ability to relieve suffering and save life in some of such cases, which are known to be frequent. He says, as hereinbefore quoted: "I do not treat persons for broken limbs, or in cases of obstetrics, etc., that require surgical assistance." Without the requisite learning in obstetrics how would he know a case that needed surgical assistance from one that did not, when sent for to give relief? And if he did not, what would become of his patient while he mistakenly applied his remedy, supposing it was not a case needing surgical assistance, when in fact it was? If the patient dies, is he to be excused because his remedy was a harmless one and did no hurt, when there has been a neglect to use what it is admitted by him would have been an effectual remedy, but which he did not use himself because of a want of knowledge as to how to use it, and did not call in another to use, who did know how, because of a like want of knowledge as to when the conditions were such as to render its use necessary? Without the ability to diagnose disease how would the defendant know a case of pregnancy in certain stages from a case of tumor of the womb? Will each pass away by means of mental suggestion?

These admissions of the defendant, in themselves, prove the wisdom of the law, and the necessity for requiring, as a protection to the people, that the professional healer or curer, who holds himself out to serve the public in that capacity, whatever be his system of treatment, have knowledge of those branches of learning named in the law, to the end that, while leaving him free to choose his own curative means, the public may be assured that the choice shall be made only after an intelligent understanding of the nature of the trouble he offers to treat, and of the human body to which he assumes to minister. The fact that the remedy he adopts

[Pierce v. The State.]

is entirely harmless, and might be as effectively used by an uneducated as an educated person, does not, as seen, relieve the danger to the public resulting from intrusting their lives and health to a practitioner of cures who is ignorant of those things a knowledge of which science and experience have demonstrated to be highly useful and beneficial, if not necessary, in any system of treatment.

The law is a police regulation, designed for the protection of the public (*Brooks v. State,* 88 Ala. 122, 6 South. 902), and we are clear in the opinion that the case made against defendant falls within its terms and spirit, and that the statute is not unconstitutional, at least in so far as this case is concerned. Whether the statute is applicable to one who practices faith of mental cures, not for compensation, but gratuitously out of a sense of religious duty, or whether, if it was intended to so apply, it would be unconstitutional as against such persons because of an infringement of our Bill of Rights, guaranteeing religious freedom, is a question we need not and do not decide, and upon which we express no opinion whatever, since that question is not before us.

We find no error in the record, and the judgment of conviction is affirmed.

Affirmed.