# Louisville & Nashville Railroad Co. *v.* Baldwin.

*Action for Fees, by Medical Examiner against Railroad Company.*

1. *Constitutionality of law "for the protection of the travelling public against accidents caused by color blindness and defective vision," imposing on railroad company fees of medical examiners.*—The act approved February 28th, 1887, entitled "An act for the protection of the travelling public against accidents caused by color blindness and defective vision" (Sess. Acts 1886-7, p. 87), is a legitimate exercise of the police power of the State, so far as it requires persons in the employment of railroad companies, in certain designated capacities, to submit to a

[Louisville & Nashville R. R. Co. v. Baldwin.]

medical examination as prescribed, and to obtain a certificate of fitness from the examiners, without which they are declared disqualified to serve in any of the specified employments, and subject to criminal prosecution ; but the provision of the 3d section, that the required examinations and re-examinations shall be made "at the expense of the railroad companies," is not a legitimate exercise of the police power, nor within the limits of any other constitutional power. (CLOPTON, J. dissenting, as to the latter proposition.)

APPEAL from the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

This action was brought by Dr. Benj. J. Baldwin, against the appellant corporation, to recover the sum of $1,300 "for services rendered by plaintiff for defendant in the examination of defendant's employees for color blindness;" and was commenced on the 8th October, 1887. The plaintiff was one of the medical examiners appointed by Governor Seay, under the provisions of the act approved February 28th, 1887, entitled "An act for the protection of the travelling public against accidents caused by color blindness and defective vision" (Sess. Acts 1886-7, p. 87); and he sued to recover the fees prescribed and allowed by the 3d section of the act. The complaint contained only a special count, alleging his appointment as one of the medical examiners, the performance of services by him in the examination of defendant's employees, and the defendant's refusal to pay the specified fees on demand. The defendant demurred to the complaint, on the ground that the statutory provision was unconstitutional and void; and the demurrer being overruled, filed a special plea denying its liability for the fees claimed by the plaintiff, on the same ground. The court sustained a demurrer to this plea, and the defendant declined to plead over. The rulings on demurrer are now assigned as error.

JONES & FALKNER, for appellant.

TROY, TOMPKINS & LONDON, contra.

CLOPTON, J.—Appellee was appointed an examiner under the provisions of "An act for the protection of the travelling public against accidents caused by color blindness and defective vision." The Act disqualifies all persons affected with color blindness and loss of visual power, one or both, to the extent defined therein, from serving on railroad lines in the capacity of locomotive engineer, fireman, train-

·[Louisville & Nashville R. R. Co. v. Baldwin.]

conductor, brakeman, gate-tender, or signal-man, or in any other position which requires the use or discrimination of form or color signals; and makes it a misdemeanor for any person to serve in any of the capacities mentioned, without first having obtained a certificate of fitness in accordance with the provisions of the act. It requires the Governor to appoint, as examiners, a suitable number of properly qualified medical men, distributed throughout the State; authorizes any one of them to make the examination, and issue the certificate, and provides for prescribing the methods in which the examinations shall be made. The examiner is entitled to a fee of three dollars. The third section provides: "That on and after the first day of June, 1887, examinations and re-examinations, at the expense of the railroad companies, shall be required under this law; and any railroad company, officer or agent of the same, employing after said date a person in any of the capacities specified in section one of this act, who does not possess a certificate of fitness therefor, in so far as color blindness and visual powers are concerned, duly issued in accordance with the requirements of this act, shall be guilty of a misdemeanor, and for each and every offense shall be punished by·a fine of not less than fifty, nor more than five hundred dollars; *Provided*, that those persons already in employment in said capacities on the first day of June, 1887, shall be allowed until the first day of August, 1887, in which to procure the necessary certificates."—Acts, 1886-7, p. 87. Appellee brings the action to recover of defendant the fees for examinations of persons serving in the specified capacities on a railroad in this State. The main contention between the parties relates to the power of the legislature to impose upon the railroad companies the expense of the examinations and re-examinations required by the act.

The police power, which has always been regarded of the utmost importance, and as essential to good order, extends to the protection of the lives, health, comfort, safety and quiet of all persons, and to the protection of all property. In respect to railroads, it has been said by a learned judge: "It may be extended to the supervision of the track, tending switches, running upon the time of other trains, running a road with a single track, using improper rails, not using proper precaution by way of safety-beams in case of the breaking of the axle-trees, the number of brakemen upon the train with reference to the number of cars, employing

[Louisville & Nashville R. R. Co. v. Baldwin.]

intemperate and incompetent engineers and servants, running beyond a given rate of speed, and a thousand similar things, most of which have. been made the subject of legislation or judicial determination, and all of which may be." As to their employees, it may be extended to the police which the corporations themselves exercise in the absence of legislative regulations.—*Thorpe v. Rutland R. R. Co.*, 62 Amer. Dec. 625.

In *McDonald v. State*, 81 Ala. 279, the act "to require locomotive engineers in this State to be examined and licensed by a board to be appointed by the Governor for that purpose," was brought before this court. The enactment declares unlawful, and makes a misdemeanor for the . engineer of any railroad train in this State to drive or operate any train of cars or engine upon the main line or roadbed of any railroad in this State, which is used for the transportation of persons, passengers or freight, without first undergoing an examination, and obtaining a license as therein provided. The act requires the Governor to appoint a board of examiners, who are authorized to make the examinations, and to issue the licenses; and the examining member of the board is entitled to a fee of five dollars, to be paid by the applicant. It was contended, that the act is a regulation of commerce between the States, and contravenes the Constitution of the United States. SOMERVILLE, J., speaking for the court, says: "In our opinion, it is a mere internal police regulation, which was competent to be provided for by the State, as a proper mode of preserving the safety of the travelling public, and other persons whose lives may well be imperilled by the negligence of ignorant and incompetent engineers." The same statute was brought before the Supreme Court of the United States, in *Smith v. Alabama*, 124 U. S. 465, on error to this court, when the same constitutional objection was made. The validity of the act was maintained, as a valid exercise of the police power. MATTHEWS, J. says: "It is properly an act of legislation, within the scope of the admitted power reserved to the State, to regulate the relative rights and duties of persons being and acting within its territorial jurisdiction, intended to operate so as to secure for the public safety of person and property."

The statute now under consideration came before the same court in *Nash., Chatt. & St. L. Ry. Co. v. Alabama*, 128 U. S., also on error to this court. After referring to the .

[Louisville & Nashville R. R. Co. v. Baldwin.]

decision in *Smith v. Alabama,* and the provisions of the statute adjudged to be valid in that case, FIELD, J. says: "The act now under consideration only requires an examination and license of parties to be employed on railroads in certain specified capacities, with reference to one particular quali- fication—that relating to his visual organs; but this limita- tion does not affect the application of the decision. If the State could lawfully require an examination as to the gen- eral fitness of a person to be employed on a railway, it could, of course, lawfully require an examination as to his fitness in some one particular." The statute was held to consti- tute a part of that body of the local laws which governs the relation between carriers of passengers and freight and the public who employ them. It relates to the duties of rail- road companies, and the rights of the travelling public, de- fining and declaring that certain specified things shall be done and observed to insure the safe carriage of passengers. In view of the foregoing adjudications, that the provisions of the act fall within the class of police regulations, we can not regard an open question.

The legislature, having the power to supervise and regu- late the business of railway companies, so far as may be needful to the safety of passengers, had implied authority to provide suitable and efficient means of enforcing the regu- lations, and impose the expense on the companies. On this principle rest the provisions of many such statutes. Deal- ers in many classes of merchandise are required to submit them to inspection, and dealers using weights and measures to have them officially approved, and pay the fees of the of- ficers. Steam vessels are required to submit to inspection, and pay the expense thereof. The duties have often been imposed on railroad companies, to fence their roads, station flag-men at public crossings, and provide safeguards at places of danger, at their own expense. The statutes of the sev- eral States afford many other illustrations of the application of the same principle, the constitutionality of which has not been doubted.—*B. & M. R. R. Co. v. Commissioners,* 79 Me. 386; *Morgan v. Louisiana,* 118 U. S. 455; *Thorpe v. Rutland R. R. Co., supra; Kansas Pacific Railway Co. v. Mower,* 16 Kan. 573. The supervision is not because of benefit to the parties whose business is supervised, but in the interest of the public good, health and safety. If the State has the authority to impose upon railroad companies the expense of inspecting their tracks and machinery, of

stationing flag-men at public crossings, and providing safeguards when necessary, on no sound principle can the right be denied to have their employees examined by a competent board constituted by State authority, and to require the companies to pay the reasonable expense of ascertaining that their employees possess the qualifications required by law—the expense in ascertaining that the agencies used by them in operating their roads, the fitness of which is essential to the protection and safety of life and property, are suitable and efficient. This, as I understand it, is the view of the statute taken in *Nash.; Chat. & St. L. R. R. Co. Alabama, supra,* where, in answer to the objection, that the act deprived the companies of property without due process of law, FIELD, J. says: "Requiring railroad companies to pay the fees allowed for the examination of parties, who are to serve on their railroad in one of the capacities mentioned, is not depriving them of property without due process of law. It is merely imposing upon them the expenses necessary to ascertain whether their employees possess the physical qualifications required by law."

But, conceding the right to require payment of the expense of enforcing proper police regulations, counsel contend that the statute operates to create a State board of examiners, before whom every person, desiring to be employed in the specified capacities, whether or not in actual employment when the statute went into effect, shall appear and be examined, to the end that the State, in exercising its licensing power, may be informed what persons can be trusted to engage in certain occupations; and that the requirement that the railroad companies shall pay the expense, is the imposition of a tax under color of establishing police regulations, unauthorized by the taxing power. Taxation is not the purpose, nor ordinarily a legitimate exercise, of the police power. Its province is to supervise and regulate, in doing which a license fee may be exacted, to assist in the regulation, but should not exceed the necessary or probable expense of inspecting and regulating the business to which the power is extended, including the expense of issuing the license, and compensation to the officer required, and such incidental and additional expense as may be necessary to enforce the regulations.—*Vanhook v. City of Selma,* 70 Ala. 361; Cooley on Tax. 598. In establishing police regulations, a license fee may be exacted for the purpose of raising revenue; but, when done, the tax is not imposed under the police

power, but under the separate and distinct power of taxation, and comes within the provisions of the constitution limiting the exercise of the latter power. The requirement, that the railroad companies pay the expense of the examinations, is not the imposition of a tax in the constitutional sense. No part of the fee allowed the examiner, which is the only expense required to be paid, goes into the State treasury, or assists in raising the public revenue, and it can not be applied to any purpose other than payment of the expense of the examination. By the express terms of the statute, it is allowed for each and every examination, whether or not a certificate of fitness is granted, and was intended to cover from time to time the expense of enforcing the statutory regulations.

If the operation of the act be, as counsel insist, to impose on the companies the fee for examining and licensing persons who are not in their employment, and who sustain no relation to them in the department of their business supervised, it goes beyond the scope and province of the police power, and falls within the provision of the Constitution, which prohibits private property being taken for private use, or depriving a person of property without due process of law. It is an essential constituent of a valid law, imposing upon the companies the expense, that it be restricted to the examination of persons who are to be employed, or are in the service of the companies in some one of the specified capacities—agencies employed by them to carry on their business. As is apparent from the decisions referred to above, the requirement that the examinations shall be at the expense of the companies, is sustainable only as an authorized part of the system of supervision. By the statute, all persons, whether or not in employment at the time the act took effect, are required to obtain the requisite certificate, and, of consequence, to undergo an examination, before serving in any of the specified capacities. The fifth section, which allows the fee, does not prescribe in terms by whom it shall be paid. The third section specially extends the supervision to the business of the railroad companies, and fixes the time on and after which it shall be enforced. The provision is, not that all examinations required by the act shall be at their expense, but that "examinations and re-examinations at the expense of the railroad companies *shall be required* under this law." The intention is, to establish the manner of supervision, and the mode of enforcement by examinations

and re-examinations, and by imposing penalties for employing persons who do not possess the requisite certificate of fitness. The penalty is not incurred by mere contractual employment, without actual service.

But it must be conceded, that the statute, fairly construed, operates to impose upon the companies the expense of examining those persons who were in their employment on and after the first day of June, without reference to their continuation in the service after the first day of the succeeding August, which time was allowed such employees to procure the requisite certificates. It was so construed in *Baldwin v. Kouns*, 81 Ala. 272. As has been said, its constitutionality can be maintained only so far as it is a legitimate exercise of the police power. Neither the persons then actually employed, nor the companies, incur the penalties prescribed by statute, until after the expiation of the time allowed such employees to obtain the certificates. Until then, the supervision, as to those who were in the employment of the companies, does not commence; until then, compulsory examinations of such persons can not be made. Under the police power, the expense of no examination can be imposed upon the companies, except of the agencies used in carrying on their business, when it becomes their duty to submit to supervision, and examinations may be compelled. So far as the statute requires examinations to be made prior to the first of August, 1887, at the forced expense of the companies, of persons in their employ on the first day of June preceding, without reference to their continuation in service after the first of August, it goes beyond a legitimate and constitutional exercise of the police power.

My brothers differ from this conclusion, holding the provision of the statute under consideration unconstitutional, as not being a legitimate exercise of the police power. They will express their own views. I concur in the reversal of the judgment, on the ground, that the complaint does not aver facts sufficient to show the liability of defendant for examinations had between the first day of June and August.

Reversed and remanded.

STONE, C. J.—The certificate exacted of certain employees of railroad companies, in reference to their power to distinguish colors, is certainly a legitimate exercise of the police power of the Government. Its tendency is to increase the chances of safety in railroad travel, at best more or less

hazardous. And it is certainly within the pale of legislative power, to punish by fine or penalty any railroad company, which intrusts the running of a train to the control of an agent or agents who are without the requisite evidence of qualification. This would be dealing with the conduct of the corporation—its operation by which it earns its income, and it is right and proper that it should be made to pay the expense of such violation of its duty.

The question presented by this record is different. It is not, whether the road is properly appointed, properly constructed, and properly equipped, but whether persons serving it, or seeking employment at its hands, are duly qualified for the service they propose to render. This is made by the law one of the conditions upon which the particular line of duties can be undertaken by the applicant. It is a qualification he must possess before he can accept employment; and hence it is for his benefit that the examination is had, and the certificate given. The certificate, when given, is good for five years, and authorizes the holder of it to take employment, not alone from the one railroad company, but from any company that will employ him. On the other hand, it imposes on him no duty to continue in the service of the road on which the statute proposes to assess the expense of the examination. Can a distinction be drawn between the present case, and that of any other professional man, skilled laborer, or artisan, who is required to possess certain qualifications before entering upon certain lines of employment or service? And if the expense of establishing the fact that the applicant possesses the necessary qualifications can be imposed on the employer, withovt his consent, in the one case, why not in every like case which requires tests of qualification?

The statute under consideration attempts to impose on the railroad corporations, without their consent, and whether they will or not, the expense of the examination of certain classes of their employees, for the purpose of determining their fitness for the service. Is this not a mere legislative edict, that one person [artificial] shall, without his consent, pay for services rendered to another? This is not "due process of law." Private property shall not be taken for private use. These are constitutional guarantees, and corporations are as much under their protection as natural persons are.

The case of *Morgan v. Louisiana*, 118 U. S. 455, rightly

interpreted, is not opposed to the views expressed above, and furnishes no warrant for the statute we are interpreting. The question in that case arose under the quarantine laws of Louisiana, enacted for the purpose of keeping out contagious diseases. To allow vessels to land in New Orleans, not having a bill of health free of contagious or infectious diseases, would be to greatly imperil the inhabitants of the city. The quarantine inspection or examination was required, primarily for the safety of the city, but secondarily and largely for the benefit of the vessel. If found free from disease, she could at once proceed, complete her voyage, and come into port. The benefit of the inspection was thus largely the vessel's, and furnished a sufficient consideration to uphold the charge made against her.

In the case of *N., C. & St. L. Railroad Company v. Alabama*, 128 U. S. Rep., the question we have been considering was not, and could not be raised. Hence, the remark of the eminent jurist who prepared the opinion in that case, is not an authoritative adjudication.

The majority of the court hold, that so much of the statute as imposes on the railroads the expense of the examination and certification of the qualification of its employees, is unconstitutional and void.

SOMERVILLE, J.—I concur in the opinion of the Chief Justice in this case. The law under consideration, in my judgment, passes beyond the legitimate domain of the police power, and reaches ground forbidden by the prohibitions of the Constitution. It is not denied, that the legislature has the power to regulate the business of common carriers engaged in running railroads in this State, by a reasonable exercise of its police power, having in view the preservation of the public safety.—*Smith v. The State*, 85 Ala. 341; *Smith v. Alabama*, 124 U. S. 465; *McDonald v. State*, 81 Ala. 279; s. c., 60 Amer. Rep. 158. It may also, in the lawful exercise of this power, require the examination of railroad employees for color blindness, or other defects of vision, as done in this case, and may require a certificate of personal qualification for the service in question—*Baldwin v. Kouns*, 81 Ala. 272. As to these propositions, there is no difference of opinion among the members of the court.

Such a certificate, however, is in the nature of a personal license to the employee. It is mainly and primarily for his benefit, as much so as the personal license or diploma of a

[Louisville & Nashville R. R. Co. v. Baldwin.]

lawyer, physician, druggist, or any other person engaged in any other employment would be.   It follows and adheres to his person, unless otherwise restricted, any where in the territory of the sovereignty granting it, and in whosesoever employment the licensee may be engaged.   It is only incidentally beneficial to the employer, so long as the employment may subsist.   It is not the property of the employer, but of the employee.   The debt incurred for the service rendered in making the examination is, therefore, the debt of the latter, not of the former.   The law-making power can enact no edict by which a legal liability for the debt of one person can be fastened on another, without due process of legal proceedings—according to the rules and forms established for the protection of private rights.   It can not take the property or money of one person and give it to another, by naked transfer, nor impose a liability on one person for the private benefit of another, in the absence of some relation between the parties which brings the case within the sphere of the police power.   There is a line where taxation may become spoliation.   So, laws, under the guise of police regulations, may reach the constitutional dead-line of property confiscation.   It is impossible to forecast the logical results which may practically flow from the opposite conclusion.   Farmers might as well, under color of the police power, be compelled to pay the licenses of commission-merchants employed in sampling their cotton; druggists, for the diplomas of their clerks; the patrons of schools, for certificates of qualification required for teachers; patients, for diplomas of doctors; or clients, for those of lawyers.   No precedent known to us among the adjudged cases goes to this extent, or lays down any principle, which, in our opinion, would support the constitutionality of the law under consideration, so far as it seeks to make the railroad companies liable for the expenses incurred in the examination of employees under the provisions of this act.