# Youngblood *v.* Birmingham Trust & Savings Co.

*Action on Accepted Draft, by Payee against Accommodation Acceptor.*

| 95 | 521 |
| 97 | 100 |
| 95 | 521 |
| 108 | 410 |
| 109 | 160 |
| 110 | 566 |
| 95 | 521 |
| 114 | 389 |
| 95 | 521 |
| 116 | 154 |
| 95 | 521 |
| 126 | 403 |
| 95 | 521 |
| e138 | 243 |
| 95 | 521 |
| 142 | 659 |

1. *Discount of draft by banker, at usurious rate of interest.*—When a draft, having been accepted by the drawee for the accommodation of the drawer, is presented by the latter to the banker to whose order it is made payable, and who then advances the amount to him, deducting a certain per cent. in advance for the use of the money until the maturity of the draft, the transaction is a *discount* of the draft within the meaning of the statute which makes it a misdemeanor for any banker to "discount any note, bill of exchange or draft, at a higher rate of interest than eight per cent. *per annum*" (Code, § 4140); and if the sum deducted, excluding difference of exchange, is more than legal interest, the banker can not maintain an action against the acceptor, the contract being unlawful.

2. *Same; constitutionality of statute.*—The statute which makes it a misdemeanor for "any banker" to discount any note, bill or draft at more than legal interest (Code, § 4140), applies to banking corporations as well as individual bankers, and is not an unlawful exercise of class legislation.

APPEAL from the City Court of Birmingham.

Tried before the Hon. W. W. WILKERSON.

This action was brought by the appellee, a private corporation located in Birmingham, against William Youngblood, and was founded on the defendant's acceptance of a draft for $1,000, drawn on him by Swem & Thomas, in favor of the plaintiff; which draft was dated at Birmingham, September 3d, 1889, payable to the plaintiff's order, thirty days after date, and accepted by the defendant for the accommodation of said Swem & Thomas. The plaintiff advanced the money on the accepted draft to Swem & Thomas, deducting $11.34 for the use of the money until its maturity; and several partial payments having been made on the draft, this action was brought to recover the balance due. The defendant filed a special plea, alleging, in substance, that plaintiff was a banker, and acquired the draft by a discount of it at a greater rate of interest than eight per cent., in violation of section 4140 of the Code. The plaintiff demurred to this plea, on the ground that the facts stated did not show a discount of the draft, and because said statute was unconstitutional. The court sustained the demurrer, and

[Youngblood v. Birmingham Trust & Savings Co.]

issue being joined on other pleas, one of which set up usury, and a jury being waived, rendered judgment for the plaintiff, for the balance due, without interest. The judgment on the demurrer is assigned as error.

Taliaferro & Houghton, for the appellant.—(1.) The plaintiff acquired the draft by an illegal discount of it, and therefore can not recover.—Code, § 4140; 3 Rand. Com. Paper, § 1704; Amer. & Eng. Encyc. Law, *Discount;* Bouv. Dictionary, tit. *Discount;* *Saltmarsh v. P. & M. Bank,* 14 Ala. 668-77; *Mauldin v. Br. Bank,* 2 Ala. 513; *Carlisle v. Hill,* 16 Ala. 398; *Faris v. King,* 1 Stew. 259; *Insurance Co. v. Quinn,* 73 Ala. 558; 80 Ala. 258; *Miller v. Bates,* 35 Ala. 580. That a contract founded on an act prohibited by statute is void, see *Woods v. Armstrong,* 54 Ala. 150; s. c., 25 Amer. Rep. 671, and note; *Williams v. Evans,* 87 Ala. 725; *Robertson v. Hayes,* 83 Ala. 290; *Harrison v. Jones,* 80 Ala. 412; *Shippey v. Eastwood,* 9 Ala. 198; *O'Donnell v. Sweeny,* 5 Ala. 468. (2.) The statute now embraces individual bankers and banking corporations, and is not unconstitutional.—*Carter v. Coleman,* 84 Ala. 256; *Harrison v. Jones,* 80 Ala. 412; *Ex parte Marshall,* 64 Ala. 266; *Railroad Co. v. Baldwin,* 85 Ala. 619; *Mayor v. Yuille,* 3 Ala. 137; *Shelton v. Mayor,* 30 Ala. 540; *McCreary v. State,* 73 Ala. 480. That a statute is not unconstitutional because it conflicts with natural right, see *Dorman v. State,* 34 Ala. 216-31.

Gillespy & Smyer, *contra.*—(1.) The transaction between the parties was simply a loan of money, and not a discount of the draft.—*Saltmarsh v. P. & M. Bank,* 14 Ala. 677; *Fleckner v. U. S. Bank,* 5 L. C. P. Co. (U. S.) 634; *Bank v. Johnson,* 26 *Ib.* 742. (2.) The statute does not prohibit the discounting of notes, bills and drafts, but only the taking of illegal interest; and if the transaction be within its terms, the penalty incurred is the forfeiture of the interest under the general law against usury. A contract made in violation of a general statute is void only when the subject-matter thereof is prohibited.—*Dudley v. Collier & Pinckard,* 87 Ala. 433; *Campbell v. Segars,* 81 Ala. 259; *Harrison v. Jones,* 80 Ala. 412; *Renfro v. Lloyd,* 64 Ala. 95; *Guano Co. v. Dawkins,* 57 Ala. 115; *Woods v. Armstrong,* 54 Ala. 150. If the plaintiff were a National bank, the principal would not be forfeited, and there should be no discrimination against a State bank. 23 L. C. P. Co. (U. S.) 126; 91 Ala. 217. (3.) The statute is unconstitutional.—*Carter Bros. v. Coleman,* 84 Ala. 259; *Smith v. L. & N. Railroad Co.,*

75 Ala. 450; *Home Protection Ins. Co. v. Richardson,* 74 Ala. 466; *Green v. State,* 73 Ala. 26; *Railroad Co. v. Morris,* 65 Ala. 194; *Ziegler v. Railroad Co.,* 58 Ala 594; *Mayor v. Insurance Co.,* 53 Ala. 170.

McCLELLAN, J.—The terms "discount" and "loan" are employed in the books indiscriminately and synonymously in all cases where compensation for the use of money advanced is retained out of the gross sum at the time of the advancement. Thus it is said: "Discounting, or loaning money, with a deduction of the interest in advance, is a part of the general business of banking," &c.—2 Amer. & Eng. Encyc. of Law, p. 92. And a discount is thus defined: "By the language of the commercial world, and the settled practice of banks, a discount by a bank means, *ex vi termini,* a deduction or drawback made upon its advances or loans of money, upon negotiable paper, or other evidences of debt, payable at a future day, which are transferred to the bank. The term 'discount,' as a substantive, means the interest reserved from the amount lent at the time of making the loan; as a verb, it is used to denote the act of giving money for a note or bill of exchange, deducting the interest." 5 Amer. & Eng. Encyc. of Law, 678-9. A distinction between discounts and loans is sometimes enforced by the terms of statutes obtaining in the premises; but, in the absence of any element of this kind—whenever the words stand alone upon the signification accorded them in the general law—every loan upon evidences of debt, where the compensation for the use of money till the maturity of the debt is deducted from the principal and retained by the lender at the time of making the loan, is a discount.—*Fleckner v. U. S. Bank,* 8 Wheat. 351; *Nat. Bank v. Johnson,* 14 Otto, (U. S.) 276; *Saltmarsh v. P. & M. Bank,* 14 Ala. 677; *Loan Co. v. Towner,* 13 Conn. 259; *Pope v. Capitol Bank,* 20 Kans. 440; *Bank v. Baker,* 15 Ohio St. 85; *Talmadge v. Pell,* 7 N. Y. 328; *Bank v. Bruce,* 17 N. Y. 515; *Freeman v. Britton,* 2 Harr. (N. J.) 206.

On these principles, we entertain no doubt that the transaction in and by which plaintiff acquired the draft of Swem & Thomas, which had been accepted by defendant for the accommodation of the drawers, by advancing to Swem & Thomas the face value thereof, less a certain per cent. thereon which was retained by plaintiff for the use of the gross sum so advanced for the time of the paper, was a discounting of the draft within the usual sense of that term, and hence within the meaning of the word as employed in section 4140

of the Code, there being nothing in the context of that section importing a different significance.

The section referred to is as follows : "Any banker who discounts any note, bill of exchange, or draft, at a higher rate of interest than eight per cent. *per annum*, not including the difference of exchange, is guilty of a misdemeanor." It is admitted that the plaintiff discounted the draft in question at a higher rate of interest than eight per cent. *per annum;* or rather, it is admitted that the plaintiff, which is a banking corporation, acquired the draft by paying or advancing thereon the sum nominated therein, less about one per cent. which was deducted and retained by it as compensation for the use of the money till maturity of the paper, which was due and payable at thirty days. This, as we have seen, was a discounting of the draft within the statute quoted ; and the rate of discount being equal to twelve per cent. *per annum*, the discount was violative of the statute, and involved a crime on the part of plaintiff, assuming the constitutionality of the enactment.

This was section 4435 of the Code of 1876. It was then directed against *individual* bankers only. As it then stood, it was adjudged to be unconstitutional by this court in *Carter Bros. & Co. v. Coleman*, 84 Ala. 256. The ground of that decision is not expressly stated, but it was based on authorities (*Smith v. L. & N. R. R. Co.*, 75 Ala. 449, and *S. & N. R. R. Co. v. Morris*, 63 Ala. 193), a reference to which leaves little doubt that the statute was held invalid because it did not apply also to *corporations* engaged in the business of banking; and this is made manifest by the further statement of the court: "The statute has since been changed (Code, 1886, § 4140), with what effect we need not inquire." The change here referred to consists in the omission from its last codification of the word "individual," the effect being to make it applicable to corporate as well as individual bankers, and to obviate the infirmity pointed out in *Carter Bros. & Co. v. Coleman.* We do not conceive that there could have been any other objection to the constitutionality of the original enactment; and, that objection having been eliminated by amendment, we are clear in the conviction that it is now a valid and efficacious exercise of legislative power. It is quite erroneous to say that it is class legislation, in a vitiating sense. It does apply to a class, of course, as do very many other statutes in our jurisprudence whose validity has never been, and can not be successfully questioned; as, for instances, statutes regulating railroads, physicians, lawyers, common carriers, warehousemen, &c.; but,

like all these, its application is to all of a number of persons, natural and artificial, whose occupation and business mark the lines of the class to which they belong, and as members of which they are each and all, without invidious distinction whatever, amenable to its terms solely because they pursue an avocation which the law-making power conceives should be specially regulated.

The business of banking is well understood and defined. A chief part of it, in most instances, consists in the lending of money, and this is almost always done by discounting evidences of debt. The opportunities and temptations of persons engaged in it to evade or violate laws against usury are so much greater and more frequent than those of persons not so engaged, as to raise up a necessity for the application of more stringent measures of repression than are necessary in respect of other businesses and persons engaged therein. And it is this consideration which differentiates the business of banking from all others in respect of usury, and furnishes a predicate for such legislation as is embodied in section 4140 for the regulation of banking and bankers, which does not exist as to any other occupation; just as the inherent dangers involved in the operation of a railroad differentiates that from other occupations, and necessitates legislation which would be entirely unnecessary and innocuous in respect of the business of farming, for instance. And upon this ground statutes of this character, when made to apply to all persons, whether individuals or corporations, regulating occupations, have been uniformly upheld. Judge Cooley, in this connection, says: "The legislature may also deem it desirable to prescribe particular rules for the several occupations, and to establish distinctions in the rights, obligations, duties and capacities of citizens. The business of common carriers, for instance, or of bankers, may require special statutory regulations for the general benefit; and it may be matter of public policy to give laborers in one business a specific lien for their wages, when it would be impracticable and impolitic to do the same for persons engaged in some other employments. If the law be otherwise unobjectionable, all that can be required in these cases is, that they be general in their application to the class or locality to which they apply; and they are then public in character, and of their propriety and policy the legislature must judge."—Cooley's Const. Lim., pp. 480–81.

In a recent case, a statute of Kentucky which gave a right of action against railroads to the representatives of persons, not in the service of the road, killed through the negligence

of railroad employes, came before the Supreme Court of that State on the question of its constitutionality. The argument was that this was class legislation in that it applied to railroads alone, and no liability was imposed upon other common carriers. The court, in holding this position to be unsound, among other things, said : " This statute does not single out a particular individual or corporation, and subject him or it to special burdens or peculiar rules. Nor does it do so as to some of those engaged in a particular business, as for instance, the Chinese in the laundry business, and which the Supreme Court of the United States condemned in the case of *Soon Hing v. Crowley*, 113 U. S. 703, but it subjects all in a particular business to its provisions, just as a law relative to banks and the conduct of banking would subject all in that particular business to its terms. Legislation of like character is to be found upon the statute books of every State."—*Louisville Safety Vault & Trust Co. v. Louisville & Nashville R. R. Co.*, 17 So. W. Rep. 567; s. c., 14 L. R. A. 579 and notes; and to like effect in principle are the following cases therein cited: *Railway Co. v. Mackey*, 127 U. S. 205 ; *Railway Co. v. Beckwith*, 129 U. S. 27 ; and so, on the same principle, a statute fixing the rate of interest which may be charged by pawnbrokers, is no violation of a constitutional provision for "uniform laws." *Jackson v. Showle*, 29 Cal. 267. And the general power of the legislature to regulate occupations and businesses of all kinds, keeping within the principle that all members of a particular class proposed to be regulated must be equally amenable to the regulations made, has been time and again declared by this court.—*Mayor v. Yuille*, 3 Ala. 137; *Ex parte Marshall*, 64 Ala. 266 ; *Harrison v. Jones*, 80 Ala. 412 ; *L. & N. R. R. Co. v. Baldwin*, 85 Ala. 619 ; *McDonald v. State*, 81 Ala. 274. Upon a consideration of the foregoing authorities, and the reasons which underlie them, we are, we repeat, without doubt in the conclusion that section 4140 of the Code of 1886 is a constitutional enactment.

It is equally free from doubt, in our opinion, that the effect of this statute on the transaction in and by which the plaintiff acquired the draft and acceptance sued on would vitiate it *in toto*, and avoid and defeat all right on the part of the plaintiff under that contract. The title upon which plaintiff relies is one which he acquired in confessed and palpable violation of a law which denounced his act in that regard as a crime. The doctrine is nowhere more firmly established than in Alabama, that no rights can spring from or be rested upon an act in the performance of which a

[Seymour v. Farquhar & Son.]

criminal penalty is incurred, and that all contracts which are made in violation of a penal statute, are as absolutely void as if the law had in so many words declared that they should be so.—*Moog v. Hannon's Adm'r*, 93 Ala. 503, where our cases are collated. And the logical consequence of the doctrine, in a case like the present one, involving the acquisition of a note, bill or draft by criminal means, is that not only is the act of acquisition a crime and invalid, but the paper itself—the supposed security for money advanced in contravention of the statute—is absolutely void, in the hands, at least, of him who comes by it through the commission of a penal offense.—*Pennington v. Townsend*, 7 Wend. 276 ; *Bank of U. S. v. Owens*, 2 Peters, 527.

The rulings of the trial court on the pleadings, and its finding and judgment on the facts, are opposed to these views. The judgment is reversed, and the case having been tried without jury below, judgment will be here rendered for the defendant.

Reversed and rendered.